2005-NMCA-102

117 P.3d 985

Arlo and Joyce MURKEN, on behalf of themselves and others similarly situated, Plaintiffs,

Deutsche Morgan Grenfell, Inc. and John Rendall, Defendants,

and

W. Jack Butler, Defendant–Appellant

v.

SUNCOR ENERGY, INC.; Syncrude (Canada), Inc.; Shell (Canada), Inc.; Exxon–Mobil, Inc.; Deutsche Bank, AG; Raymond and Rawl (Exxon); R. George (Suncor); Bob Pitman; Al Hyndman (Syncrude); Helmar Kopper (Deutsche Bank); and Merrill Lynch, Pierce, Fenner & Smith, Inc., Third–Party Defendants–Appellees.

No. 24,848.

Court of Appeals of New Mexico.

June 29, 2005.

Victor R. Marshall, Diane P. Donaghy, Victor R. Marshall & Associates, P.C., Albuquerque, NM, for Appellant.

Robert A. Johnson, Johnson & Nelson, P.C., Albuquerque, NM, Joel R. Sharp, Jenkens & Gilchrist, Dallas, TX, for Appellee Merrill Lynch, Pierce, Fenner & Smith, Inc.

## OPINION

KENNEDY, Judge.

{1} Third-party Plaintiff W. Jack Butler appeals from the district court's order compelling him to arbitrate his claims against multiple third-party defendants collectively referred to hereinafter as Merrill Lynch. Butler's third-party claims arose in the larger context of a securities fraud class action brought by the former shareholders of Solv–Ex Corporation against corporate officers Butler and John Rendall, among others. In response to Butler's third-party complaint, Merrill Lynch filed a motion to compel arbitration under an equitable estoppel theory. The district court granted the motion to compel arbitration and Butler appealed.

{2} Butler argues that he did not execute an agreement to arbitrate and that the doctrine of equitable estoppel does not apply in this case. We agree, and hold that equitable estoppel cannot be used by a defendant signatory against a plaintiff non-signatory claimant to compel arbitration under the facts of this case. Where, as here, the non-signatory is the plaintiff, and is not alleged to have engaged in substantially interdependent and concerted misconduct with a co-defendant or alleged to have embraced and directly benefitted from the agreement, a defendant signatory cannot use equitable estoppel to prevent the plaintiff from denying the existence of the arbitration agreement. We therefore reverse the district court on this basis and do not address the remainder of Butler's claims.

## BACKGROUND

{3} In 1996, former shareholders of Solv–Ex Corporation filed a lawsuit against Butler, Rendall, Solv–Ex Corporation, and Deutsche Morgan Grenfell, Inc. Both Rendall and Butler subsequently filed separate third-party complaints against Merrill Lynch. Butler's complaint alleged market manipulation, unlawful combination in restraint of trade, prima facie tort, defamation, and malicious abuse of process. Specifically, both Rendall and Butler alleged in their separate complaints that Merrill Lynch had dumped Solv–Ex stock on the market, contributing to

the fall in the stock's prices. In response to Butler's third-party complaint, Merrill Lynch filed a motion to compel arbitration, arguing that a pledge agreement between Merrill Lynch and Rendall, Butler's co-defendant in the class action, provided that all controversies between Rendall and Merrill Lynch would be determined by arbitration.

{4} Merrill Lynch argued that because the factual allegations in Butler's third-party complaint were similar to allegations made by Rendall, Butler should be equitably estopped from denying that the arbitration agreement applied to him. It claimed that under the doctrine of equitable estoppel Butler should be compelled to arbitration if his claims either arose out of the pledge agreement or were factually intertwined with Rendall's. Butler argued that he was not a signatory to the agreement containing the arbitration clause and that he therefore should not be compelled to arbitrate his claims. The district court was persuaded by Merrill Lynch's arguments and entered an order compelling Butler to arbitrate his third-party claims.

## DISCUSSION

{5} Butler raises four issues on appeal. He argues that (1) he did not execute an agreement to arbitrate and the doctrine of equitable estoppel does not apply in this case; (2) the uncontroverted evidence showed that Rendall did not execute an agreement containing an arbitration provision; (3) Rendall was not acting as Butler's agent even if Rendall actually did execute a pledge agreement containing an arbitration provision; and (4) Butler's third-party claims were not covered by the arbitration clause of Rendall's alleged agreement. Because Butler was not a signatory to the arbitration agreement between Rendall and Merrill Lynch, the threshold issue is whether, under the circumstances of this case, Butler can be compelled to arbitration pursuant to the doctrine of equitable estoppel. We review a district court's grant of a motion to compel arbitration de novo. *Alexander v. Calton & Assocs., Inc.,* 2005–NMCA–034, ¶ 8, 137 N.M. 293, 110 P.3d 509.

{6} Butler argues that in New Mexico, both parties must agree to arbitration in order for a court to compel arbitration. Merrill Lynch responds that although the general rule requires both parties to agree to arbitration, this case is subject to several exceptions, including the doctrine of equitable estoppel. Butler argues that the doctrine of equitable estoppel is inappropriate because there was no evidence that Butler made any misrepresentations that Merrill Lynch relied on to its detriment. *See Gallegos v. Pueblo of Tesuque,* 2002–NMSC–012, ¶ 24, 132 N.M. 207, 46 P.3d 668 ("Equitable estoppel precludes a litigant from asserting a claim or defense that might otherwise be available to him against another party who has detrimentally altered his [or her] position in reliance on the former's misrepresentation or failure to disclose some material fact." (internal quotation marks and citation omitted)). Merrill Lynch contends that equitable estoppel is applied differently in the arbitration context in an approach endorsed by this Court in *Horanburg v. Felter,* 2004–NMCA–121, ¶ 18, 136 N.M. 435, 99 P.3d 685. Butler takes issue with this reading of *Horanburg,* asserting that the doctrine of equitable estoppel has not been recognized in New Mexico as a vehicle by which an arbitration provision can be enforced against a non-signatory to the agreement.

{7} We agree with Butler that Merrill ·Lynch's reliance on *Horanburg* is misplaced. In that case, we stated that "[g]enerally, third parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration." *Id.* ¶ 16. Then, without deciding whether New Mexico would recognize the application of equitable estoppel to compel arbitration, we determined that equitable estoppel was not appropriate in that case. *Id.* ¶ 18. In summarizing the approaches taken by the federal courts to include non-signatories within arbitration agreements, we first observed that "a principal-agent analysis has been applied to include a non-signatory to an arbitration agreement within an arbitration when the interest of the non-signatory is directly related to that of a signatory." *Id.* ¶ 16. We declined, based on the facts of that case, to apply an agency theory. *Id.* We also acknowledged that a line of federal cases has held that in

certain situations, a non-signatory could compel a signatory to arbitration under an equitable estoppel theory "(1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantially interdependent and concerted misconduct by both another signatory and a non-signatory." *Id.* ¶ 17. We did not address when a non-signatory could be compelled to arbitration.

{8} Merrill Lynch relies on *Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp.*, 176 F.Supp.2d 1091 (D.Colo. 2001) [hereinafter *Cherry Creek*], and *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753 (11th Cir.1993), to argue that non-signatories to arbitration agreements have been equitably estopped from denying they are bound by the arbitration agreements. Merrill Lynch asserts that under these cases, non-signatories may be estopped when (1) they knowingly exploit the agreement containing the arbitration clause, or (2) their claims are intimately intertwined with the contract containing the arbitration clause. We are not persuaded that these cases support Merrill Lynch's argument for estoppel in this case.

{9} In *Cherry Creek*, the owner of the card shop sued its wholesaler, Hallmark, for misappropriation of trade secrets, breach of contract, breach of the implied covenant of good faith and fair dealing, and misrepresentation/concealment. 176 F.Supp.2d at 1093. Hallmark then moved to stay the case pending arbitration. *Id.* at 1094. Cherry Creek was not a signatory to the arbitration agreement, and the district court found that Hallmark had not demonstrated that equitable estoppel was justified. *Id.* at 1096–97. In its discussion of the issue, the district court stated the same two theories cited in *Horanburg*, addressing when a non-signatory could compel a signatory to arbitration. *Cherry Creek*, 176 F.Supp.2d at 1098. Contrary to Merrill Lynch's representation that the court held that equitable estoppel applies when a non-signatory's claims were intimately intertwined with a contract containing an arbitration clause, the *Cherry Creek* court wrote that:

> courts have bound a signatory to arbitrate with a nonsignatory at the nonsignatory's

insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.

*Id.* (internal quotation marks and citation omitted) (alterations in original). This is essentially the same test this Court described in *Horanburg*, 2004–NMCA–121, ¶ 17. Thus, a *signatory*, not a non-signatory, is estopped when the signatory's claims are intertwined with the contract. *Cherry Creek*, 176 F.Supp.2d at 1098. This was precisely the situation in *Sunkist Soft Drinks, Inc.*, where Sunkist Growers, a signatory to a licensing agreement containing an arbitration clause, sued Del Monte, a non-signatory that had absorbed the stock of a signatory, alleging contract and tort claims arising from and directly related to the licensing agreement. 10 F.3d at 755, 758. Under those circumstances, the signatory, Sunkist Growers, was estopped from contesting Del Monte's right to invoke the arbitration clause of the licensing agreement. *Id.* at 758.

{10} As one commentator has pointed out, the "two stage test is most usual in situations where the non-signatory is seeking to compel arbitration against the signatory." James M. Hosking, *The Third Party Non–Signatory's Ability to Compel International Commercial Arbitration: Doing Justice Without Destroying Consent*, 4 Pepp. Disp. Resol. L.J. 469, 533 (2004). This case presents the inverse situation: a signatory (Merrill Lynch) seeks to compel a non-signatory (Butler) to participate in arbitration. The Second Circuit has pointed out that the distinction between estopping a signatory from denying the existence of an arbitration agreement and estopping a non-signatory is important. *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995). The circuit court noted that "the circuits have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party

has signed." *Id.* The court reasoned, however, that the non-signatory "cannot be estopped from denying the existence of an arbitration clause to which it is a signatory because no such clause exists." *Id.* It emphasized that this was so because "[a]rbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." *Id.* The court acknowledged that the Second Circuit had previously "bound nonsignatories to arbitration agreements under an estoppel theory" in other cases. *Id.* at 778. The court pointed out, however, that in one of those other cases, the non-signatory had benefitted from and "knowingly exploit[ed]" an agreement containing an arbitration award by which it could use a trade name in return for complying with the terms of the agreement. *Id.* *Thomson–CSF, S.A.* noted, however, that that case fell "squarely within traditional theories [of contract and agency] for binding nonsignatories to an arbitration agreement." *Id.* at 780. It has been commented that "the crucial lesson from Thomson ... is the Court's recognition of the distinction between estopping a non-signatory as opposed to a signatory claimant." Hosking, *supra,* at 532–33.

{11} Moreover, the circumstances of a non-signatory who has engaged in "substantially interdependent and concerted misconduct" with a co-defendant who is a party to the arbitration agreement are not present here. *Horanburg,* 2004–NMCA–121, ¶ 17. Merrill Lynch argued only that Butler's claims were intertwined with the same claims, or based on the same underlying facts, as those of Rendall (who, Merrill Lynch argued, was a signatory). *See Cherry Creek,* 176 F.Supp.2d at 1098 (stating that a *signatory* can be bound by the arbitration agreement where the claims are intertwined with the contract). Merrill Lynch, however, does not argue that Rendall was Butler's agent in the loan transaction giving rise to the alleged arbitration agreement. In the loan, Rendall pledged his own stock, but not Butler's, to Merrill Lynch as collateral. Merrill Lynch also does not assert that Butler benefitted from this pledge agreement between Rendall and Merrill Lynch. *See id.* (noting that non-signatories have been bound by arbitration agreements under equitable estoppel when the non-signatory has embraced and directly benefitted from the underlying contract). Finally, Merrill Lynch does not claim that there was "substantial[ ] interdependent and concerted misconduct" by Butler and Rendall. *See Horanburg,* 2004–NMCA–121, ¶ 17. Such conduct, while alleged by the plaintiffs in the underlying class action, is not relevant to the third-party action between Merrill Lynch and Butler.

{12} Courts that apply the doctrine of equitable estoppel do so "to avoid rendering meaningless the purpose of the signatories['] agreement, an arbitration, in the absence of a non-signatory." *Id.* ¶ 19. We are not persuaded that Merrill Lynch and Rendall's agreement to arbitrate would be rendered meaningless if Butler were not involved in the arbitration. Accordingly, even if New Mexico recognized the doctrine of equitable estoppel in the arbitration context, its application would not be appropriate in this case. Finally, in light of our ruling on this issue, we do not address Butler's other arguments.

## CONCLUSION

{13} We hold that equitable estoppel cannot be used by a defendant signatory against a plaintiff non-signatory claimant to compel arbitration under the facts of this case. Where, as here, the non-signatory is the plaintiff, and is not alleged to have engaged in substantially interdependent and concerted misconduct with a co-defendant or alleged to have embraced and directly benefitted from the agreement, a defendant signatory cannot use equitable estoppel to prevent the plaintiff from denying the existence of the arbitration agreement. Because we are not persuaded that the circumstances of this case justify estopping Butler from denying the existence of an arbitration agreement, we reverse the district court's order compelling Butler to arbitrate his claims against Merrill Lynch.

{14} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and JONATHAN B. SUTIN, Judges.