2006-NMCA-065

136 P.3d 1043

**Arlo and Joyce MURKEN, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**SOLV–EX CORPORATION, W. Jack Butler, Defendants,**

**and**

**John S. Rendall, Defendant–Appellant,**

**and**

**Deutsche Morgan Grenfell, Inc., Defendant–Appellee.**

**No. 25,468.**

Court of Appeals of New Mexico.

April 25, 2006.

**634**

John S. Rendall, Albuquerque, NM, Pro Se Appellant.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., John R. Cooney, Charles A. Armgardt, Albuquerque, NM, Milbank, Tweed, Hadley & McCloy, LLP, Jeffrey Barist, New York, NY, Milbank, Tweed, Hadley & McCloy, LLP, Michael D. Nolan, Andrew M. Leblanc, Washington, D.C., for Appellee.

## OPINION

PICKARD, Judge.

{1} This case requires us to decide whether a non-settling defendant in a class action has standing to object to a court-approved settlement entered into by the class plaintiffs and another defendant. We hold that, while there may be instances in which a non-settling defendant may have such standing, the case at bar is not one of them. We therefore reject all of the non-settling defendant's arguments seeking to nullify the order approving the settlement. We affirm the district court's order approving the settlement.

## FACTS AND PROCEEDINGS

{2} This appeal is yet another arising from the demise of the Solv–Ex Corporation. *See Murken v. Solv–Ex Corp.*, 2006–NMCA–064, 139 N.M. 625, 136 P.3d 1035, 2006 WL 1593903 (No. 25,459, filed April 25, 2006); *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, 140 N.M. 111, 140 P.3d 532 (Nos. 25,556, 25,557, 25,558 filed April 25, 2006); *Murken v. Solv–Ex Corp.*, 2005–NMCA–137, 138 N.M. 653, 124 P.3d 1192; *Murken v. Suncor Energy, Inc.*, 2005–NMCA–102, 138 N.M. 179, 117 P.3d 985. The basic facts are that Defendant Rendall was the founder and CEO of Solv–Ex. Solv–Ex was a corporation that purported to have technology that could extract oil from tar sands without producing the toxic tailings that conventional methods produce. In the mid–1990s, Solv–Ex's stock was doing well. In 1996, however, the price of it plunged, and the company ultimately went bankrupt in 1997.

{3} According to the class plaintiffs, the problems with Solv–Ex's stock were caused by the fact that the technology was a fraud. In 1996, they sued the company, Rendall, Butler (another officer and large shareholder in the company), and Deutsche Morgan Grenfell (DMG), a financial company that was allegedly involved in financing the company, as well as marketing its shares through misleading reports. According to Rendall, the problems with the stock were caused by Solv–Ex's competitors in the oil extraction business, who conspired with DMG and its parent corporation to pull the financing from Solv–Ex so that Solv–Ex would fail and the competitors would not have to compete with a corporation that could extract oil from tar sands without the severe environmental consequences that were caused by the competitors' processes.

{4} In 2003, the class plaintiffs and DMG settled their differences and the class plaintiffs presented the settlement plan to the district court. On the same day that the motion to preliminarily approve the plan was filed, the district court signed the preliminary approval. Rendall moved to vacate it, but the district court denied his motion on the ground that he lacked standing to object to the settlement. Rendall's basic objections were that (1) the class plaintiffs could not settle with DMG without affording Rendall an opportunity to litigate the issue of who and what caused Solv–Ex's demise and (2) the entry of the preliminary approval without

notice to Rendall or his being involved in a hearing leading to that approval was a denial of his due process rights.

{5} At the time of the final approval of the settlement, Rendall also appeared and objected. At this time, he argued that (1) he was a member of the plaintiff class inasmuch as his shares of Solv–Ex were damaged also, (2) he had an outstanding malicious prosecution counterclaim against the class representatives that disqualified them from representing the class, and (3) he was prejudiced by the settlement because a jury should determine whether he and the other original defendants were responsible for the fall in stock price or whether the international conspiracy among competitors and others was responsible for it. The district court again ruled that Rendall lacked standing to object.

{6} The district court entered a final judgment certifying the class and approving the settlement between the class plaintiffs and DMG. Rendall filed a timely notice of appeal in the district court in which he asked "leave" of this Court to appeal the class certification. DMG then filed a response, opposing Rendall's "application for appeal," and Rendall filed a reply asking this Court to consider his appeal an appeal as of right. This Court assigned the case to its general calendar without granting any application, thereby treating Rendall's appeal as an appeal as of right and permitting him to raise any issues he wished that arose from the final judgment approving the settlement between the class plaintiffs and DMG.

## DISCUSSION

■ {7} Rendall raises seven issues on appeal, which roughly correspond to the objections he made in the district court. It would unduly lengthen this opinion to lay out his arguments on each issue. If the district court was correct that Rendall did not have standing to raise any objection to the settlement, we should affirm. We review de novo the question of whether Rendall had standing to object to a settlement to which he was not a party. *See In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1332 (3d Cir.1990); *Forest Guardians v. Powell*, 2001–NMCA–028, ¶ 5, 130 N.M. 368, 24 P.3d 803.

■ {8} It is well established that non-settling parties usually have no standing to object to a settlement agreement into which other parties have entered. *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:55, at 178 (4th ed.2002) [hereinafter *Newberg* ]. "[N]on-settling defendants generally have no standing to complain about a settlement, since they are not members of the settling class." *Transamerican Ref. Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir.1992). Among the reasons for this rule is the policy favoring settlements, especially in complex class-action cases. *Newberg, supra; In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1102 (10th Cir.2001).

■ {9} There is a limited exception to this rule, and it applies when a non-settling party can demonstrate prejudice caused by the settlement. *In re Integra Realty Res., Inc.*, 262 F.3d at 1102. However, the type of prejudice must be "plain legal prejudice." *Id.* (internal quotation marks and citation omitted). "Plain legal prejudice" has been defined as including the situation where there is legal interference with a party's right to seek contribution or indemnification or where the settlement "strips the party of a legal claim or cause of action." *Id.* at 1102–03 (quoting *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir.1992)). "Mere allegations by a nonsettling party that prejudice exists because there is a loss of 'resource sharing,' 'broader discovery,' or 'bargaining power,' is insufficient." *Newberg, supra*. A mere allegation of injury is also insufficient. *See In re Integra Realty Res., Inc.*, 262 F.3d at 1103.

■ {10} Measured by these standards, Rendall's claims of prejudice are insufficient. First, he claims that the class action alleged a conspiracy between him and DMG that would result in joint and several liability. He implies that the settlement agreement cut off his rights to contribution or indemnification. However, as pointed out by DMG, there is nothing in the settlement agreement that bears on any of Rendall's rights. In particular, there is no attempt in the settlement agreement to cut off any rights to contribution or indemnification, nor is there any attempt to enjoin Rendall's actions in

connection with these lawsuits in any way. Thus, *Altman v. Liberty Equities Corp.*, 54 F.R.D. 620 (S.D.N.Y.1972), on which Rendall relies, is wholly inapposite. In that case, the proposed settlement contained a provision barring the non-settling defendants from making any claims against the settling defendants. *Id.* at 622. Because there is no comparable provision in this case, Rendall's argument is without merit. *See Zupnick v. Fogel*, 989 F.2d 93, 98–99 (2d Cir.1993) (upholding settlement agreement because it was not binding on non-settling defendants).

{11} Second, Rendall appears to claim prejudice in that the settlement with DMG leaves him "holding the baby on a claim which I dispute." However, this is the sort of general prejudice that the cases hold is insufficient to confer standing. Instead of general prejudice, Rendall must show plain legal prejudice, which requires some legal right or claim to be cut off. None of Rendall's rights or claims has been cut off by the settlement agreement between the class plaintiffs and DMG.

{12} Third, Rendall alleges prejudice because of his still-pending malicious prosecution claim against the representatives of the plaintiff class. However, this allegation is just another objection to the settlement, not a claim of legal prejudice such as would give Rendall standing. Moreover, instead of showing that such a claim has been cut off by the settlement, Rendall's allegation proves that his claim is still viable, or at least is not cut off by the settlement. Thus, this assertion of prejudice is unavailing to Rendall.

{13} Fourth, Rendall claims that he is in fact a member of the plaintiff class because his stock has been adversely affected. A class member would have standing to object and would not need to show legal prejudice. However, Rendall is not a member of the class. Both the class-action complaint and the settlement agreement expressly excluded the original defendants from the class, and thus Rendall's claim is not supported by the record.

{14} In short, none of Rendall's claims of prejudice rise to the level of legal prejudice such as are required to give him standing to object to the settlement. The policy favoring the voluntary settlement of legal disputes would be undermined were claims such as Rendall's allowed to scuttle a settlement between other parties that does not affect the non-settling party's legal rights.

**CONCLUSION**

{15} The entry of the final judgment approving the settlement between the class plaintiffs and DMG is affirmed as against Rendall's objections to it.

{16} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and RODERICK T. KENNEDY, Judges.