**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-118

Filing Date: October 22, 2012

Docket No. 30,967

ROBERT BRUCE FREDERICK,

       Plaintiff-Appellant,

v.

SUN 1031, LLC, H. RAY KNIGHT,
and NAI THE VAUGHAN COMPANY,

       Defendants-Appellees,

and

SUN BYRON, LLC, SUN SHELBY, LLC,
and SUN TIFFANY, LLC,

       Third-Party Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Clay Campbell, District Judge

Robert Bruce Frederick
Santa Fe, NM

Pro Se Appellant

Beall & Biehler
Peter Grueninger
Gregory L. Biehler
Albuquerque, NM

for Appellee Sun 1031, LLC

H. Ray Knight
Phoenix, AZ

Pro Se Appellee

NAI The Vaughan Company
Albuquerque, NM

Pro Se Appellee

Steve Henry
Corrales, NM

for Appellees Sun Byron, LLC,
Sun Shelby, LLC, and Sun
Tiffany, LLC

## OPINION

**WECHSLER, Judge.**

**{1}** Plaintiff Robert Frederick appeals two district court orders: (1) an order denying his motion to strike Defendant Sun 1031, LLC's (1031) third-party complaint and (2) an order granting 1031's and Third-Party Defendants' Sun Byron, LLC, Sun Shelby, LLC, and Sun Tiffany, LLC (collectively, Byron, Shelby, and Tiffany) motion to compel arbitration. Frederick argues that (1) the district court erred by denying his motion to strike 1031's third-party claim because the third-party complaint failed to state a valid claim under Rule 1-014(A) NMRA; (2) assuming the third-party complaint was proper, Byron, Shelby, and Tiffany have no right to compel arbitration between Frederick and 1031 under the purchase agreements because Rule 1-014 does not allow a third-party defendant to assert defenses that the defendant cannot assert against the plaintiff; (3) the district court erred in granting the motion to compel arbitration with 1031 because 1031 was not a party to the purchase agreements and did not otherwise have an arbitration contract with Frederick; and (4) alternatively, Frederick's claims are not within the scope of the purchase agreements' arbitration clause. We hold that the district court erred by denying Frederick's motion to strike because the third-party complaint did not adequately plead a claim for indemnity. Additionally, the district court erred by granting the motion to compel arbitration. Accordingly, we reverse both district court orders.

## BACKGROUND

**{2}** Frederick commenced this action on March 27, 2009 by filing a complaint against H. Ray Knight (Knight), 1031, and NAI the Vaughan Company (Vaughan) (collectively, Defendants), alleging violations of state and federal securities laws, fraud, negligent misrepresentation, and civil conspiracy. Frederick thereafter amended his complaint to allege only violations of the New Mexico Securities Act of 1986, NMSA 1978, § 58-13B-1 to -57 (1986, as amended through 2004) (repealed 2010) (Securities Act).

2

**{3}** In the amended complaint, Frederick alleges that 1031, an Arizona limited liability company, offered certain investment packages to the public, that Knight served as 1031's broker, and that Vaughan is a New Mexico corporation that marketed the investment packages to sell to New Mexico buyers. The investment packages consisted of fractional, undivided, tenancy-in-common interests in income-producing real property coupled with other collateral arrangements that include property management, financing, market analysis, and other essential investment services for the properties. Frederick invested $450,000 total in three properties. As to each of the three properties, 1031 created a separate limited liability company to act as the seller of the real property. Frederick purchased interests in (1) the Byron Town Center in Minnesota from Sun Byron, LLC; (2) the Shelby Crossing Shopping Center in Tennessee from Sun Shelby, LLC; (3) the Tiffany Center in Missouri from Sun Tiffany, LLC.

**{4}** Frederick alleges that the investment packages are an "investment contract" under the Securities Act. Although Frederick acknowledges that the offer and sale of real estate, without more, does not constitute an investment contract under the Securities Act, he asserts that the investment packages in this case are investment contracts because they consist of a real property interest coupled with collateral arrangements including property management. He alleges that Defendants committed six violations of the Securities Act by: (1) acting as broker-dealers without being licensed, (2) acting as investment advisors without being licensed, (3) offering unlicensed securities (the investment contracts) for sale, (4) engaging in securities fraud by inducing Frederick to rely on information about the investment packages that was false, misleading, and incomplete, (5) making untrue statements of material fact and misleading omissions of material fact in offering the investment packages, and (6) collectively engaging in a conspiracy to commit these violations of the Securities Act.

**{5}** 1031 answered the amended complaint, asserting an affirmative defense that Frederick's claims were subject to the arbitration clauses in the purchase agreements. 1031 also filed a third-party complaint against Byron, Shelby, and Tiffany. Frederick moved to strike 1031's third-party claim, arguing that 1031 and Byron, Shelby, and Tiffany were in collusion and that 1031's third-party complaint failed to state a valid claim under Rule 1-014(A). 1031 filed a renewed motion to compel arbitration based on its third affirmative defense. Byron, Shelby, and Tiffany filed a joint answer to Defendant's third-party claim. Frederick thereafter filed a motion for summary judgment on 1031's third affirmative defense, arguing that 1031 could not compel arbitration under the arbitration clause in the purchase agreements. The district court granted the motion for summary judgment, but without prejudice, ruling that the issue was not ripe for determination until it ruled on Frederick's motion to strike 1031's third-party complaint and 1031's renewed motion to compel arbitration. The district court later denied 1031's motion to compel arbitration without prejudice, ruling that it did not have all the facts because Byron, Shelby, and Tiffany were not present at the hearing regarding the motion and had yet to be served.

**{6}** Thereafter Byron, Shelby, and Tiffany filed a motion to compel arbitration on all

disputes, arguing that arbitration should be ordered because 1031 impleaded Byron, Shelby, and Tiffany for indemnity for claims "arising under, out of or relating to" the purchase agreements between Byron, Shelby, and Tiffany and Frederick. 1031 joined in the motion.

**{7}** The district court held a hearing and subsequently issued an order granting the motion to compel arbitration, stating that "[Frederick] is hereby ordered to arbitrate all of his claims in this matter against . . . 1031 . . . in accordance with the purchase agreements entered into by [Frederick] and [Byron, Shelby, and Tiffany]." Although the district court initially indicated that it was only sending the parties participating in the briefing and the hearing to participate in the arbitration, it later denied Frederick's motion for reconsideration, sending "*all* parties into arbitration[,]" including Vaughan and Knight.

**{8}** On appeal, Frederick argues that the district court erred by denying its motion to strike 1031's third-party claim because Defendant's third-party complaint failed to state a valid claim under Rule 1-014(A). Frederick further argues that, assuming the third-party complaint was proper, Byron, Shelby, and Tiffany have no right to compel arbitration between Frederick and 1031 under the purchase agreements because Rule 1-014(A) does not allow a third-party defendant to assert defenses that the defendant cannot assert against the plaintiff. Next, Frederick argues that the district court erred in granting the motion to compel arbitration with regard to 1031 and all parties because Defendants were not parties to the purchase agreements and did not otherwise have an arbitration contract with Frederick. Alternatively, Frederick argues that his claims against Defendants are not within the scope of the purchase agreements' arbitration clause.

## RULE 1-014

### Motion to Strike

**{9}** We first address Frederick's argument that the district court erred by denying the motion to strike 1031's third-party complaint because Defendant failed to state a valid claim against Byron, Shelby, and Tiffany under Rule 1-014(A). We review the failure of the district court to dismiss a third-party complaint under an abuse of discretion standard. *See Yelin v. Carvel Corp.*, 119 N.M. 554, 558, 893 P.2d 450, 454 (1995) (stating that it is an abuse of discretion "[t]o refuse to dismiss a third-party complaint which [does] *not* meet the standards of Rule 1-014[(A)]" (first alteration in original) (internal quotation marks and citation omitted)).

**{10}** The relevant portions of Rule 1-014(A) provide that a defending party "may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." However, the rule "does not authorize a defendant to bring into a lawsuit every party against whom he may have a claim arising from the transaction at issue between the defendant and the plaintiff." *Grain Dealers Mut. Ins. Co. v. Reed*, 105 N.M. 586, 587, 734 P.2d 1269, 1270 (1987). In order for Rule 1-014 to apply, a third-party defendant must be secondarily liable to the defendant on

4

a theory such as contribution or indemnity, in the event that the defendant is held liable to the plaintiff. *Id.*

**{11}** The relevant portions of the third-party complaint state that:

> 3. [Frederick] alleges in his [f]irst [a]mended [c]omplaint that the tenants-in-common interests purchased from . . . Byron, . . . Shelby and . . . Tiffany are securities subject to statutory requirements under the . . . Securities Act. [Frederick] further requests as relief that . . . Defendants grant, assign and transfer all property, including his TIC interests to . . . Defendants and pay to [Frederick] $450,000, plus interest from the date of his purchase of the TIC interests less any net income received by him.

> 4. . . . should [Frederick] recover on any of the claims he makes, . . . 1031 . . . is entitled to indemnity from . . . Byron, . . . Shelby and . . . Tiffany as the sellers of the tenants-in-common interests at issue in this matter and entities which received payment from [Frederick].

1031 characterizes its claim against Byron, Shelby, and Tiffany as one seeking proportional indemnification, a theory recognized by our Supreme Court in *In re Consol. Vista Hills Retaining Wall Litig.*, 119 N.M. 542, 551, 893 P.2d 438, 447 (1995) and *Yelin*, 119 N.M. at 556, 893 P.2d at 452, or, alternatively, as one seeking traditional equitable indemnification.

**{12}** 1031 argues that its claim for proportional indemnification is valid in that it seeks indemnification to the extent that Byron, Shelby, and Tiffany sold the real property interests to Frederick and received the consideration paid by Frederick for his alleged securities. It characterizes its proportional indemnification claim as "seek[ing] no more than a comparative assignment of any liability for [Frederick's] claims between [1031] and [Byron, Shelby, and Tiffany]." As stated during oral argument, 1031 alleges that if the sale was improper, Byron, Shelby, and Tiffany should be liable for their part in it.

**{13}** Generally "proportional indemnification allows a defendant to seek partial recovery from another for his or her fault." *N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 23, 145 N.M. 316, 198 P.3d 342. In *In re Consol. Vista Hills Retaining Wall Litig.*, 119 N.M. at 551, 893 P.2d at 447, our Supreme Court noted that "[p]roportional indemnification has its genesis in jurisdictions that did not adopt a system of contribution among tortfeasors" and "[i]n most cases the adoption of proportional indemnification has followed [the] adoption of comparative fault." *Id.* The Court adopted proportional indemnification in limited circumstances and held that "proportional indemnification applies only when contribution or some other form of proration of fault among tortfeasors is not available." *Id.* at 552-53, 893 P.2d at 448-49. Under these principles, a properly-pled proportional indemnification claim must allege that the indemnitee caused some harm and is partially liable for claims made against the indemnitor. *See Christus St. Vincent Reg'l*

5

*Med. Ctr. v. Duarte-Afara*, 2011-NMCA-112, ¶ 14, 267 P.3d 70 (stating that, in order to state a claim for proportional indemnification, "the indemnitor must be at least partly liable to the original plaintiff for his or her injuries" (internal quotation marks and citation omitted)), *cert. granted*, 2012-NMCERT-__,__ P.3d __ (No. 33,166, Oct. 12, 2011).

**{14}** 1031 also appears to argue that its third-party complaint stated a complaint for traditional equitable indemnification. *See N.M. Pub. Sch. Ins. Auth.*, 2008-NMSC-067, ¶ 23 (stating that New Mexico recognizes "both traditional and proportional equitable indemnification"). "Traditional indemnification grants the person who has been held liable for another's wrongdoing an all-or-nothing right of recovery from a third party, such as the primary wrongdoer." *Christus St. Vincent Reg'l Med. Ctr.*, 2011-NMCA-112, ¶ 14 (internal quotation marks and citation omitted). "[O]ur Supreme Court has explained that [in order] to state a claim for equitable indemnification, the indemnitor must be at least partly liable to the original plaintiff for his or her injuries. In other words, a properly pled indemnity claim must allege that the defendant [or indemnitor] caused some *direct harm* to a third party and that the plaintiff or [indemnitee] discharged the resulting liability from this harm." *Id.* (alteration, internal quotation marks, and citations omitted).

**{15}** In this case, 1031's third-party complaint did not state an adequate claim for proportional or traditional indemnification against Byron, Shelby, and Tiffany. The third-party complaint does not allege that Byron, Shelby, and Tiffany are wholly or partially liable to Frederick for the violations of the Securities Act that Frederick alleges against Defendants in the complaint. The only allegations contained in the third-party complaint are that Byron, Shelby, and Tiffany were the sellers of the real property interests that, when coupled with the investment packages, comprised the alleged securities sold to Frederick, and that, as a result, Defendants are entitled to indemnity. The third-party complaint does not allege the manner in which Byron, Shelby, and Tiffany are liable to Frederick for his Securities Act claims. Frederick's complaint alleges that Defendants violated the Securities Act by acting as unlicensed advisors and broker dealers, offering unlicensed securities for sale, and engaging in securities fraud and making untrue statements of material fact or omissions of material fact in offering the securities for sale. 1031's third-party complaint fails to allege that Byron, Shelby, and Tiffany jointly or wholly were responsible for these specific actions that Frederick alleged violated the Securities Act. Instead, the third-party complaint contains an unsupported legal conclusion that Defendants are entitled to indemnity because Byron, Shelby, and Tiffany transferred the real property interest to the properties that partially made up the alleged illegal securities and does not properly plead a claim for proportional or traditional indemnification. *See Yates Exploration, Inc. v. Valley Improvement Ass'n, Inc.*, 108 N.M. 405, 409, 773 P.2d 350, 354 (1989) (applying the principle that "[u]nsupported legal conclusions need not be accepted" in holding that a third-party complaint did not state an adequate basis for indemnity). The district court therefore erred in denying Frederick's motion to strike the third-party complaint.

**Defenses Available to Byron, Shelby, and Tiffany**

**{16}** Although we conclude that Byron, Shelby, and Tiffany were not proper parties in this action, we address Frederick's argument that Byron, Shelby, and Tiffany's motion to compel arbitration was improper because it was based on an affirmative defense unavailable to 1031 and the other Defendants. In Frederick's view, a third-party defendant under Rule 1-014(A) may only assert defenses that the defendant has to the plaintiff's claim, and, accordingly, Frederick contends that 1031 could not compel arbitration because it was not a signatory to the purchase agreements. This issue requires the interpretation of Rule 1-014(A) and therefore our review is de novo. *See H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 2008-NMCA-013, ¶ 5, 143 N.M. 404, 176 P.3d 1136 ("Our review is de novo because the interpretation of rules is a question of law.").

**{17}** "When construing our procedural rules, we use the same rules of construction applicable to the interpretation of statutes." *Allen v. LeMaster*, 2012-NMSC-001, ¶ 11, 267 P.3d 806. "We first look to the language of the rule." *In re Michael L.*, 2002-NMCA-076, ¶ 9, 132 N.M. 479, 50 P.3d 574. "If the rule is unambiguous, we give effect to its language and refrain from further interpretation. We also seek guidance from the rule's language, history, and background." *Allen*, 2012-NMSC-001, ¶ 11 (internal quotation marks and citations omitted). Further, we look to interpretations of Fed. R. Civ. P. 14(a) for guidance because the rule is virtually identical to Rule 1-014(A). *See Gates v. State, N.M. Taxation & Revenue Dep't*, 2008-NMCA-023, ¶ 11, 143 N.M. 446, 176 P.3d 1178 (stating that "because [a state court rule] is virtually identical to [a federal rule], we turn to the interpretations of federal courts for guidance").

**{18}** We begin by examining the plain language of Rule 1-014(A), in particular the portions pertaining to the claims and defenses that a third-party defendant may raise. In relevant part, Rule 1-014(A) provides that

> [t]he third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses . . . and his counterclaims and cross-claims[.]

**{19}** Frederick did not assert any claims against Byron, Shelby, and Tiffany, and they did not assert any claims against Frederick. Thus, Rule 1-014(A) provides Byron, Shelby, and Tiffany only one option regarding the defenses it may assert against Frederick: they may assert defenses that are available to Defendants to defend against Frederick's cause of action. Rule 1-014(A) specifically limits the defenses a third-party defendant can raise to "defenses which the [defendant] has to the plaintiff's claim." Nothing in the rule allows a third-party defendant to assert a defense to the original plaintiff's claim that is not available to the

7

original defendant when the plaintiff has not asserted a claim against the third-party defendants. 1031 argues that because Rule 1-014(A) states that a third-party defendant "may assert . . . any defenses which the [defendant] has to the plaintiff's claim" and is therefore permissive, it was not intended to limit the third-party defendant from only asserting the defenses available to the defendant. However, the permissive language of Rule 1-014 simply means that the assertion of defenses by a third-party defendant is permissive and not mandatory, not that a third-party defendant may assert defenses outside the scope of the language limiting any defenses asserted to be available to the defendant. *Cf. State ex rel. Regents of E. N.M. Univ. v. Baca*, 2008-NMSC-047, ¶ 10, 144 N.M. 530, 189 P.3d 663 (per curiam) (reading permissive language in a statute authorizing an appeal from certain administrative decisions as "mean[ing] that the appeal itself is permissive and not mandatory[,]" not that the plaintiff may bypass the procedure).

**{20}** Our reading is consistent with the derivative nature of impleader under Rule 1-014(A). Our Supreme Court "has consistently interpreted [Rule 1-014(A) as requiring] that the third party's potential liability . . . be derivative of or dependent upon the outcome of the primary claim against the defendant." *Yelin*, 119 N.M. at 555, 893 P.2d at 451; *see also Yates Exploration, Inc.*, 108 N.M. at 408, 773 P.2d at 353 ("To come within the scope of Rule 1-014(A), the third-party's potential liability must in some way be dependent upon the outcome of the main claim against the defendant [and t]raditionally, derivative or secondary liability to the defendant . . . is considered to be essential." (citations omitted)). Because a third-party defendant's liability is derivative or dependent on the plaintiff's claim against the defendant, it follows that a third-party defendant may only assert a defense to the plaintiff's claim that is available to the defendant.

**{21}** Our reading is also consistent with the purposes of Rule 1-014(A). In *Lindner v. Meadow Gold Dairies, Inc.*, 515 F. Supp. 2d 1141, 1148-49 (D. Haw. 2007), the federal district court of Hawaii examined the advisory committee's notes to the federal version of Rule 1-014, Fed. R. Civ. P. 14(a) and concluded that the provision allowing a third-party defendant to assert defenses to the plaintiff's claim is designed to protect the third-party defendant from (1) collusion between the plaintiff and the defendant, and (2) the prejudice or unfairness that may result from the defendant failing to assert the appropriate defenses. Neither purpose is furthered by allowing a third-party defendant to assert defenses not available to the defendant. *See F & D Prop. Co. v. Alkire*, 385 F.2d 97, 100 (10th Cir. 1967) (stating that Fed. R. Civ. P. 14 "assures a third[-]party defendant complete defense protection" and therefore "a third[-]party defendant is in the law[]suit as an adverse party to the same extent as the defendant and must act accordingly").

**{22}** Although our New Mexico appellate courts have yet to consider the extent that a third-party defendant can assert a defense to the plaintiff's claim that is not available to the defendant, several federal courts and other states with analogous rules have concluded that a third-party defendant is limited to defenses available to the defendant under procedural rules similar to Rule 1-014(A). *See Becenti v. Becenti*, 2004-NMCA-091, ¶ 10, 136 N.M. 124, 94 P.3d 867 (recognizing that this Court may look to federal law for guidance in

8

interpreting rules of civil procedure identical to their federal counterparts). For example, in *Bellefeuille v. City & Cty Sav. Bank*, 351 N.Y.S.2d 738, 739 (App. Div. 1974), the plaintiff, a window washer, sued the owner of a building (the defendant) for injuries suffered after falling three stories during the course of his employment. The defendant impleaded the plaintiff's employer (the third-party defendant). *Id.* The third-party defendant asserted affirmative defenses to the plaintiff's claim based on the exclusive remedy provisions of the state's worker's compensation law. *Id.* at 739-40. Applying the New York equivalent to Rule 1-014(A), which contains identical language in the relevant portions, the court held that the third-party defendant could not assert the exclusive remedy provisions as to the plaintiff's main claim because "the defendant was not the employer, these defenses are not available to [the] defendant and, consequently, . . . the third-party defendant." *Id.* at 740; *see also Brandt v. Olson*, 179 F. Supp. 363, 371 (N.D. Iowa 1959) (holding that under Fed. R. Civ. P. 14(a), a third-party defendant cannot assert a venue defense waived by the defendant).

**{23}** Similarly, in *Minnesota Landmarks v. M.A. Mortenson Co.*, 466 N.W.2d 413, 415 (Minn. Ct. App. 1991), the court addressed a comparable provision to Rule 1-014(A). In that case, the plaintiff sued a general contractor (the defendant) for defective skylights. *Id.* at 414. The defendant impleaded the subcontractor that installed the skylights (the third-party defendants). *Id.* Once the plaintiff commenced litigation, the plaintiff and the defendant entered into a "standstill agreement" to toll the statute of limitations while negotiating a settlement. *Id.* at 414-15. The third-party defendant filed a motion for summary judgment on the third-party claims based on a statute of limitations defense. *Id.* at 415. The Minnesota Court of Appeals held that the third-party defendant could not raise a statute of limitations defense because the defendant did not have a statute of limitations defense as a result of the standstill agreement. *Id.* The court reasoned that "in asserting this *derivative* defense, third-party defendants cannot place themselves in a better position than that held by [the defendant]." *Id.*; *see also F & D Prop. Co.*, 385 F.2d at 100 (holding that under Fed. R. Civ. P. 14(a), a third-party defendant "is in the law[]suit as an adverse party to the same extent as the defendant and must act accordingly" and that when the third-party defendant fails to object to a defendant's stipulation of facts for the purposes of summary judgment, it was bound by the stipulation).

**{24}** Based on the plain language of Rule 1-014(A) and its consistency with the derivative nature of a third-party complaint, Byron, Shelby, and Tiffany can only assert a defense to Frederick's original cause of action that is available to Defendants. Therefore, Byron, Shelby, and Tiffany could only assert the defense of arbitration if the defense could be independently asserted by Defendants. We therefore turn to whether Defendants had an independent right to compel arbitration under the arbitration clause in the purchase agreements.

**1031'S INDEPENDENT RIGHT TO COMPEL ARBITRATION**

**{25}** Defendants argue that even if "[Byron, Shelby, and Tiffany's] arbitration defense is

only available if it is available to . . . 1031, such a defense *is* available to . . . 1031" under an equitable estoppel theory. "[W]e review the applicability and construction of a provision requiring arbitration de novo." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 51, 131 N.M. 772, 42 P.3d 1221; *see also Murken v. Suncor Energy, Inc.*, 2005-NMCA-102, ¶ 5, 138 N.M. 179, 117 P.3d 985 ("We review a district court's grant of a motion to compel arbitration de novo.").

**{26}** Generally, a third-party who is not a signatory to an arbitration agreement is not bound by the agreement and therefore is not subject to, and cannot compel, arbitration. *Horanburg v. Felter*, 2004-NMCA-121, ¶ 16, 136 N.M. 435, 99 P.3d 685. However, as we recognized in *Horanburg*, a "line of federal cases finds exceptions to the general rule that a non-signatory cannot compel arbitration based on principles of equitable estoppel under two circumstances: (1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges [substantial interdependence] and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless." *Id.* ¶ 17. However, because the facts in *Horanburg* did not support the application of either exception, we declined to decide whether New Mexico recognizes equitable estoppel to compel arbitration. *Id.* ¶ 18.

**{27}** 1031 argues that the first exception discussed in *Horanburg* applies because "Frederick's claims are clearly intertwined with the contract containing the arbitration clause[.]" In 1031's view, Frederick "seeks to exploit the agreement containing the arbitration clause by filing a securities claim that, essentially, seeks rescission of that agreement based upon a cause of action that requires the purchase agreement to have been entered."

**{28}** Although we agree with 1031 that the purchase of real property is essential to Frederick's claim that the investment package is a security, the terms of the purchase agreements or even the existence of the purchase agreements are not essential to prove the sale of the property. Courts that have applied equitable estoppel to allow a non-signatory to compel arbitration have required a closer nexus between the claims and the arbitration agreement's terms. For example, in *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000), the agreement containing the arbitration clause was a distribution agreement for the distribution rights to a film. The plaintiff, the trustee for the owners of the film, sued the distributor after the distributors gave the film a limited distribution. *Id.* The distributor sought to compel arbitration under the distribution agreement, and the plaintiff voluntarily dismissed his suit. *Id.* A few months later, the plaintiff again filed suit, this time joined by the distributor and producers, against an actor and his agency firm. *Id.* The defendants moved to compel arbitration, even though they were non-signatories to the distribution agreement. *Id.* The Fifth Circuit held that arbitration was proper because the "claims are intertwined with, and dependent upon, the distribution agreement, including, but *not* limited to, [the d]efendants [and a signatory defendant] being charged with interdependent and concerted misconduct." *Id.* at 531. According to the Fifth Circuit, the

claims were intertwined because the ultimate success of the complaint "turns on the meaning of the distribution agreement's numerous—often intricate—provisions[.]" *Id.* at 530. In other words, the cause of action required that the case be resolved by referencing and interpreting the distribution agreement.

**{29}** In this case, the terms of the purchase agreements are not relevant to Frederick's claims. The alleged Securities Act violations do not hinge on the terms of, or require the interpretation of, the purchase agreements. Indeed, Frederick could prove that the investment package is a security under the Securities Act without entering the purchase agreement into evidence, as long as he adequately proves the sale of the real estate interests, because Frederick's claims in this case are not derived from or intertwined with the agreement containing the arbitration clause; and, equitable estoppel does not apply. *See Horanburg*, 2004-NMCA-121, ¶ 18 (holding that equitable estoppel was not appropriate because the "[p]laintiff's claims . . . are not alleged to be derived from the agreement" containing the arbitration clause).

**{30}** Further, the second exception discussed in *Horanburg*, when a signatory alleges substantial interdependence and concerted misconduct by both another signatory and a non-signatory, does not apply under the facts of this case. *See id.* ¶ 17. The courts that have applied this exception have generally required that the party being estopped from denying arbitration have alleged substantial and concerted misconduct by another signatory and non-signatory. For example, in *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 944 (11th Cir. 1999), *abrogated on other grounds as recognized by Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011), the plaintiff entered into a buyer's order to purchase a vehicle from a dealership. The buyer's order contained an arbitration clause. *Id.* The plaintiff sued the dealership and a company not a party to the buyer's order (non-signatory) with which the dealership required the plaintiff to enter into a service contract. *Id.* The complaint alleged that the dealership and the non-signatory "improperly cooperated, conspired and otherwise colluded" to defraud the plaintiff by charging an excessive fee for the service contract. *Id.* at 945. The Eleventh Circuit held that the plaintiff was estopped from avoiding arbitration with the non-signatory and therefore compelled arbitration. *Id.* at 947. It reasoned that the plaintiff's claims alleged a conspiratorial relationship between the non-signatory and the dealer to defraud the plaintiff, and therefore "are based on the same facts and are inherently inseparable." *Id.* at 948 (internal quotation marks and citation omitted).

**{31}** In this case, Frederick's complaint does not allege any interdependent or concerted misconduct between 1031 and Byron, Shelby, and Tiffany. Even assuming that 1031 alleged collusion with Byron, Shelby, and Tiffany in its third-party complaint, the allegations in 1031's third-party complaint are not relevant to the claims between 1031 and Frederick for purposes of this exception. *See Murken*, 2005-NMCA-102, ¶ 11 (holding that conduct "alleged by the plaintiffs . . . is not relevant" in determining whether there was substantially interdependent and concerted misconduct between the third-party defendant and the defendant in a case in which the third-party defendant moved to compel arbitration).

11

**{32}** Equitable estoppel does not provide a means for 1031 to compel arbitration with Frederick. The district court erred by granting Byron, Shelby, and Tiffany's and 1031's motion to compel arbitration.

## CONCLUSION

**{33}** The district court erred by denying Frederick's motion to strike because the third-party complaint did not adequately plead an indemnity claim. Additionally, the district court erred by granting Defendant's and Byron, Shelby, and Tiffany's motion to compel arbitration. Accordingly, we reverse both district court orders.

**{34}  IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for _Frederick v. Sun 1031, LLC_, No. 30,967**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Arbitration
Civil Procedure, General
Estoppel
Third-party Actions

**CIVIL PROCEDURE**
Arbitration

**REMEDIES**
Arbitration

**STATUTES**
Interpretation
Legislative Intent

Rules of Construction