2004-NMCA-121

99 P.3d 685

**Linda HORANBURG, Plaintiff–Appellee,**

v.

**Jeffrie FELTER, M.D., Defendant–Appellee,**

v.

**Lovelace Health Systems, Inc., a Division of CIGNA Healthcare, Defendant–Appellant.**

**No. 23,681.**

Court of Appeals of New Mexico.

Aug. 31, 2004.

Kim E. Kaufman, Nancy A. Wagner, Duhigg, Cronin, Spring, Berlin & Bencoe, Albuquerque, NM, for Appellee Linda Horanburg.

Mark J. Klecan, Elaine R. Dailey, Klecan & Childress, for Appellee Jeffrie Felter, M.D.

Patricia G. Williams, Lorna M. Wiggins, Wiggins, Williams & Wiggins, Albuquerque, NM, for Appellant.

## OPINION

WECHSLER, Chief Judge.

{1} At issue in this appeal is the scope of an arbitration agreement and the ability of a non-signatory to the agreement to compel arbitration against a signatory. Defendant Lovelace Health Systems (Lovelace) appeals a district court order compelling arbitration but estopping it from arguing the issue of whether a doctor was acting outside the course and scope of his employment with Lovelace when the acts alleged by Plaintiff occurred. We reverse the portion of the order estopping Lovelace from raising the course and scope of the doctor's employment during the arbitration proceedings. We also reverse the district court's decision to include Plaintiff's claims against the non-signatory doctor in the arbitration proceedings.

### Factual and Procedural History

{2} Plaintiff sued Lovelace for retaliation, negligent hire and retention, constructive discharge, intentional infliction of emotional distress, and violation of the New Mexico Human Rights Act, NMSA 1978, § 28–1–7 (2003). Plaintiff also asserted claims against Dr. Jeffrie Felter alleging assault, battery, and violation of the Human Rights Act. In response to a motion by Lovelace joined by Dr. Felter, the district court entered an order compelling arbitration but estopping Lovelace from arguing at the arbitration hearing that Dr. Felter was acting outside the course and scope of his employment or agency at the time of the incidents. The order also determined that the arbitration agreement applied to Plaintiff's claims against both Lovelace and Dr. Felter.

### Arguments on Appeal

{3} Lovelace filed this appeal, arguing that the district court erred by exceeding the scope of the threshold issue of arbitrability, invading the purview of the arbitrator, and depriving Lovelace of a potential defense. Plaintiff argues in her answer brief that the district court properly ruled her claims were arbitrable only if Dr. Felter's acts were committed within the course and scope of his employment or agency. Plaintiff also argues that, if this Court reverses the issue regarding course and scope, it should rule that her claims against Dr. Felter are not subject to the arbitration agreement.

{4} Dr. Felter argues in his answer brief that he invoked the arbitration agreement at the request of Lovelace based on the presumption that it would accept vicarious liability for any award against him. He asserts that he does not intend to argue that his actions were outside the course or scope of his employment with Lovelace and that the district court's estoppel ruling should be affirmed. Lovelace responds to Plaintiff by asserting that the language of the arbitration agreement does not require it to concede that the incidents occurred during the course and scope of Dr. Felter's employment and that its invocation of the arbitration clause should not have been treated as an admission of liability.

{5} We note that the order compelling arbitration of all issues is a final, appealable order. *See Lyman v. Kern,* 2000–NMCA–013, ¶ 9, 128 N.M. 582, 995 P.2d 504.

### Plaintiff's First Amended Complaint

{6} Plaintiff's first amended complaint alleges claims against both Lovelace and Dr. Felter, a former Lovelace employee. As against Lovelace, Plaintiff claims: retaliation because she was reprimanded and placed on administrative leave after filing discrimination charges with the Human Rights Division of the New Mexico Department of Labor; negligent hire and retention because Lovelace knew or should have known that its employees continued to harass Plaintiff in retaliation for her complaint with the Human Rights Division; constructive discharge because Plaintiff had filed the discrimination complaint and because she was physically assaulted by another employee; and intentional infliction of the emotional distress because Lovelace failed to properly supervise and control its employees and provide a safe working environment. As against Dr. Felter, Plaintiff alleges assault and battery, both occurring in February 2000. Plaintiff asserts that both Lovelace and Dr. Felter violated the Human Rights Act by subjecting Plaintiff to sexual harassment. The incidents alleged in the complaint all occurred at the work place.

### The Arbitration Agreement

{7} Lovelace adopted an "Employment Dispute Arbitration Policy" (arbitration agreement) in 1999. The "Statement of Policy" sets out its intent:

In the interest of fairly and quickly resolving employment-related disagreements and problems, and applying the important public policies expressed in the Federal Arbitration Act, 9 U.S.C. Sec. 1 *et seq.,* CIGNA Healthcare Division's policy is that arbitration by a neutral third-party is the required and final means for the resolution of any employment related legal claim not resolved by the Division's internal dispute resolution process.... This policy is intended to prevent an employee from going to court over employment related disputes;

it is not intended to take away any other rights.

The arbitration agreement defines the scope of the arbitration procedure as:

This policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege or interest recognized by applicable law. Such serious disputes include claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, FMLA, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment.

The arbitration agreement explains more than once that it "is intended to substitute final and binding arbitration ... for going to court" and does not prohibit an employee from filing a charge with, or seeking redress from, the National Labor Relations Board or other state or federal agencies.

### Interpretation of the Arbitration Agreement

{8} The terms of the arbitration agreement govern the scope of the arbitration proceedings and are interpreted according to contract law principles and the plain meaning of the language used. *See Christmas v. Cimarron Realty Co.,* 98 N.M. 330, 331, 648 P.2d 788, 790 (1982); *Heye v. American Golf Corp.,* 2003–NMCA–138, ¶ 9, 134 N.M. 558, 80 P.3d 495. When the scope of the arbitration proceedings involves interpreting documentary evidence, as in this case, the matter is a question of law which we review de novo. *See California Cas. Ins. Co. v. Garcia–Price,* 2003–NMCA–044, ¶ 6, 133 N.M. 439, 63 P.3d 1159; *Santa Fe Techs., Inc. v. Argus Networks, Inc.,* 2002–NMCA–030, ¶ 51, 131 N.M. 772, 42 P.3d 1221.

{9} The arbitration agreement repeatedly uses the words "employment related" to describe the types of disagreements, problems,

legal claims, or disputes to be arbitrated. The heart of the current controversy arises from the meaning of "employment related" as used in the arbitration agreement. In deciding that Plaintiff's claims against Dr. Felter were subject to arbitration, the district court reasoned that, "[i]f Dr. Felter was not acting within the scope of his employment or agency with Lovelace, there is a question whether Dr. Felter's alleged actions would be employment related, and the arbitration provision would not apply." This reasoning led the district court to prohibit Lovelace from arguing that Dr. Felter was acting outside the course and scope of his employment.

{10} Plaintiff and Dr. Felter argue that the district court properly estopped Lovelace from adopting inconsistent positions. They reason that it is inconsistent to allow Lovelace to invoke the arbitration agreement because the claims are "employment related" and also to allow it to argue that Dr. Felter's actions were not within the course and scope of his employment. Their position and the decision of the district court rest on the proposition that "employment related" is essentially synonymous with actions that are within the course and scope of employment.

■ {11} Contract terms are to be given their ordinary, every day meaning unless otherwise indicated. *See generally Levenson v. Mobley,* 106 N.M. 399, 402, 744 P.2d 174, 177 (1987) (stating the general rule that the words used in a contract will be given their ordinary meaning unless the parties demonstrated an intent to use them differently); *Crownover v. Nat'l Farmers Union Prop. & Cas. Co.,* 100 N.M. 568, 572, 673 P.2d 1301, 1305 (1983) ("Absent express language to the contrary, a court should apply the every day meaning in interpreting the terms of a contract."). The ordinary, every day meaning of "employment related" is not synonymous with the term "within the course and scope of employment." We agree with Lovelace that these descriptions have distinct meanings and that "employment related" may include conduct "within the course and scope of employment" but that the one description does not necessarily imply the other.

{12} The phrase "within the course and scope of employment" has been given a very specific meaning in the legal context. In defining "scope of employment," UJI 13–407 NMRA specifically defines the elements necessary to prove that actions occurred within the course and scope of employment:

An act of an employee is within the scope of employment if:

1. It was something fairly and naturally incidental to the employer's business assigned to the employee, and

2. It was done while the employee was engaged in the employer's business with the view of furthering the employer's interest and did not arise entirely from some external, independent and personal motive on the part of the employee.

*Id.* In contrast, the plain meaning of "related" is simply "connected by reason of an established or discoverable relation." *See* Webster's Third New International Dictionary 1916 (Unabridged 1993).

{13} To be connected to employment, it is not necessary that the matter be "fairly and naturally incidental to the employer's business assigned to the employee" or that it be done "with the view of furthering the employer's interest," as required by the jury instruction on scope of employment. *See* UJI 13–407. It is enough that the "employment-related" claim is connected to the claimant's employment. In this case, to present an arbitrable claim, it is enough that Plaintiff's claims against Lovelace are connected to her employment with Lovelace. The plain meaning of the terms of the arbitration agreement does not warrant reading into the arbitration agreement a requirement that actions by a co-worker are necessarily "within the course and scope" of that co-worker's employment. *See Christmas,* 98 N.M. at 332, 648 P.2d at 790 (stating the "well established principle of contract law that courts will not rewrite a contract for the parties").

{14} Although the issues in this case happen to involve co-workers, the critical facts are that Plaintiff's claims are all connected with her employment with Lovelace, arise out of incidents that occurred at Plaintiff's work place with Lovelace, and relate to con-

ditions of her employment with Lovelace. With this predicate, the actions of her co-worker do not need to be within the course and scope of his employment with Lovelace in order for Plaintiff's complaint to invoke the provisions of the arbitration agreement. It does not matter that the allegations against Dr. Felter are also related to Plaintiff's employment with Lovelace because they occurred at a Lovelace facility while Plaintiff was working. We reverse the district court's order estopping Lovelace from arguing during the arbitration hearing that Dr. Felter was not acting within the course and scope of his employment.

### Plaintiff's Claims Against Dr. Felter

{15} The district court determined that the arbitration agreement also applies to Plaintiff's claims against Dr. Felter. Plaintiff objects to this determination, asserting that the arbitration agreement is narrow in scope and that the district court erred in including her claims against Dr. Felter. Plaintiff argues that this portion of the order must be reversed because nothing in the arbitration agreement compels one Lovelace employee to arbitrate tort claims against another Lovelace employee. Having reversed on Lovelace's issue regarding whether Felter's actions were in the course and scope of his employment, we address Plaintiff's issue about whether her claims against Dr. Felter should be subject to arbitration. *See* Rule 12–201(C) NMRA (providing for review of an issue raised by an appellee for determination only if the appellate court reverses some or all of the order being appealed).

{16} Generally, third parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration. *See Pueblo of Laguna v. Cillessen & Son, Inc.*, 101 N.M. 341, 343–44, 682 P.2d 197, 199–200 (1984); *see also Cherry Creek Card & Party Shop, Inc. v. Hallmark Mktg. Corp.*, 176 F.Supp.2d 1091, 1097 (D.Colo.2001). In extending the arbitration to Dr. Felter, the district court relied on *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir.1993), to the effect that a principal-agent analysis has been applied to in-

clude a non-signatory to an arbitration agreement within an arbitration when the interest of the non-signatory is directly related to that of a signatory. *See id.* at 1122 (holding that a principal's agents, employees, and representatives were covered under the terms of arbitration agreements that bound the principal). However, we are not persuaded that an agency analysis applies in this case. Although Dr. Felter was an employee of Lovelace, the issue remains as to whether he was acting within the course and scope of his employment with regard to Plaintiff's allegations against him. Therefore, as distinguished from *Pritzker*, it is not clear that Dr. Felter, as an employee of Lovelace, acted as Lovelace's agent with regard to his actions that are the subject of Plaintiff's complaint.

{17} Another line of federal cases finds exceptions to the general rule that a non-signatory cannot compel arbitration based on principles of equitable estoppel under two circumstances: (1) when a signatory to the agreement must rely on the terms of the agreement in making a claim against a non-signatory; or (2) when a signatory alleges substantially interdependent and concerted misconduct by both another signatory and a non-signatory, making arbitration between signatories meaningless. *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527–28 (5th Cir.2000) (upholding district court decision allowing non-signatory to compel arbitration when complaint asserted tortious interference claims arising in part out of the agreement giving rise to the arbitration and asserted collusive and conspiratorial action on the part of the non-signatories and a signatory); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999) (holding that equitable estoppel allowed a non-signatory to compel arbitration when the plaintiff's claims against the non-signatory depended entirely upon a contractual obligation arising from the agreement containing the arbitration clause and alleged a collusive fraudulent scheme on the part of the signatory and non-signatory); *see also Long v. Silver*, 248 F.3d 309, 320 (4th Cir.2001) (applying the "intertwined claims" test among others to hold that non-signatory may invoke the arbitration clause); *McBro Planning & Dev. Co. v. Triangle Elec. Constr.*

*Co.,* 741 F.2d 342, 344 (11th Cir.1984) (recognizing that a non-signatory may compel arbitration based on estoppel and the intertwined claims test).

■ {18} Nevertheless, even if we were to assume that a non-signatory to an arbitration agreement can compel arbitration by virtue of equitable estoppel, we do not believe that equitable estoppel is appropriate in this case. *See Thomson–CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 779 (2d Cir.1995) (declining to apply equitable estoppel theory when claim was not "integrally related to the contract containing the arbitration clause"). In *Grigson* and *MS Dealer,* the claims had the characteristics of both types of circumstances that the courts recognized as bases for equitable estoppel; the claims were dependent upon the agreement and also alleged substantially interdependent and concerted misconduct. In this case, neither circumstance is fully present: Plaintiff's claims against Dr. Felter are not alleged to be derived from the agreement between Plaintiff and Lovelace, and Dr. Felter's alleged conduct, which has not been determined to be within the course and scope of his employment, is not the concerted type of conduct addressed by the *Grigson* and *MS Dealer* line of cases. *Contra Cicchetti v. Davis Selected Advisors,* 2003 WL 22723015 (S.D.N.Y. 2003) (allowing a former supervisor to compel arbitration for sexual harassment claim in an action against former employee for wrongful termination and retaliation for complaining about the supervisor sexual harassment).

{19} Moreover, because arbitration is essentially a matter concerning the agreement of the parties, *Grigson* and *MS Dealer* recognize that equitable estoppel is appropriate to avoid rendering meaningless the purpose of the signatories agreement, an arbitration, in the absence of a non-signatory. *Grigson,* 210 F.3d at 527; *MS Dealer,* 177 F.3d at 947. But, we do not believe that the parties' agreement to arbitrate would be rendered meaningless if Dr. Felter were not involved in the arbitration. Although Plaintiff's claims against Lovelace for constructive discharge, intentional infliction of emotional distress, and violation of the New Mexico Human Rights Act, involve Dr. Felter, Plaintiff

also asserts claims against Lovelace for retaliation and negligent hire and retention, which appear to involve a previous discrimination claim and subsequent disciplinary action, not involving conduct by Dr. Felter. Despite a level of connectedness, Plaintiff's claims against Dr. Felter for assault and battery can be determined separately from her claims against Lovelace. We cannot say that the intent of the arbitration agreement embraces Plaintiff's forfeiture of her ability to pursue her claims against Dr. Felter through the regular court process. *See Pueblo of Laguna,* 101 N.M. at 344, 682 P.2d at 200 (declining consolidated arbitration because it was not contemplated by the parties).

### Conclusion

{20} We reverse the district court's order estopping Lovelace from arguing that Dr. Felter was acting outside the course and scope of his employment or agency at the time of the incident alleged. We also reverse the portion of the district court's order compelling arbitration of Plaintiff's claims against Dr. Felter. We remand to the district court.

{21} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and MICHAEL E. VIGIL, Judges.