FILED
United States Court of Appeals
Tenth Circuit

September 20, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THI OF NEW MEXICO AT HOBBS
CENTER, LLC; THI OF NEW MEXICO,
LLC,

        Plaintiffs-Appellees,

v.

JASON SPRADLIN, as personal
representative of the wrongful death
estate of Douglas A. Spradlin, Jr.,
deceased,

        Defendant-Appellant.

No. 12-2182
(D.C. No. 2:11-CV-0792-MV-LAM)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **HOLLOWAY**, and **BACHARACH**, Circuit Judges.

Mr. Douglas Spradlin died not long after being removed from the Plaintiffs-

Appellees' nursing home.  Mr. Spradlin's son, Jason,[1] brought a wrongful-death

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

action in state court.  The Plaintiffs-Appellees then filed suit in federal court to compel arbitration, with diversity jurisdiction being alleged and not disputed.  Jason now appeals from a federal district court order compelling arbitration of the wrongful death action.  We have appellate jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

In August 2006, Mr. Douglas Spradlin was admitted to THI of New Mexico at Hobbs Center, LLC, a nursing home, for long-term care and treatment of his dementia.  He was accompanied by his daughter, Melissa.

Upon admission, Mr. Douglas Spradlin signed a "Durable Power of Attorney for Financial and Healthcare Decision Making," appointing Jason and Melissa as his attorneys in fact.  Aplt. App. at 27.  Melissa then signed a six-page "Admission Contract."  In doing so, she checked a box indicating that she was "execut[ing] th[e] Contract in the capacit(y)" of "Immediate Family Member," rather than "Attorney-in-Fact under validly executed power of attorney."  *Id.* at 25.  Mr. Douglas Spradlin did not sign the Admission Contract.

The contract contains a clause requiring that any dispute between the parties regarding the Hobbs Center's provision of healthcare services be resolved by binding arbitration:

---

1    For the sake of clarity throughout this order and judgment, we follow Defendant-Appellant's convention and refer to Mr. Spradlin's children by their first names.

- 2 -

## VI. Arbitration

> Pursuant to the Federal Arbitration Act, any action, dispute, claim, or controversy of any kind (e.g., whether in contract or tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with the provision of healthcare services . . . causing injury to either party whereby the other party or its agents, employees or representatives may be liable, in whole or in part, . . . shall be resolved by binding arbitration administered by the National Health Lawyers Association (the "NHLA").

*Id.* at 24. Directly below this clause and immediately above the signature lines is a provision stating that "THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ AND UNDERSTOOD THIS CONTRACT, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO ALL OF ITS TERMS." *Id.*

Mr. Douglas Spradlin lived at Hobbs Center for roughly two-and-a-half years. On March 6, 2009, he was removed from the home and he died five days later.

In June 2011, Jason, as the personal representative of his father's estate, sued THI and other defendants in New Mexico state court for wrongful death. In response, THI filed a complaint in federal district court to compel arbitration. Jason then moved to dismiss THI's complaint, arguing that the arbitration agreement was invalid and unenforceable. In support of her brother's motion to dismiss, Melissa submitted an affidavit, stating that when she signed the Admission Contract, she "did not know what the term arbitration meant" and that she "felt rushed while signing the documents." *Id.* at 202. Additionally, Melissa stated she did not believe that her father was capable of understanding the power of attorney that he signed.

- 3 -

The district court concluded that it had diversity jurisdiction over the matter and that the arbitration agreement was valid and enforceable. Having resolved the only issue present, the court then dismissed the case.

## DISCUSSION

## I. Standards of Review

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, embodies the national policy favoring arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). "Although the [Supreme] Court has . . . long recognized and enforced a liberal federal policy favoring arbitration agreements, . . . the *question of arbitrability*[ ] is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation, brackets, and internal quotation marks omitted). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (internal quotation marks omitted).

"Generally, courts should apply ordinary state-law principles that govern the formation of contracts to determine whether a party has agreed to arbitrate a dispute." *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006) (internal quotation marks omitted). We review de novo a district court's decision compelling arbitration. *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012), *cert. denied*, 133 S. Ct. 2009 (2013).

- 4 -

## II. Binding Effect of the Admission Contract

A. <u>On Mr. Douglas Spradlin</u>

Jason argues that Melissa had no authority to sign the Admission Contract and bind their father because the power of attorney, which appointed her as an attorney in fact, was signed by their father while he was incompetent. But, as noted by the district court in its order compelling arbitration, the power of attorney is irrelevant because Melissa signed the Admission Contract, not pursuant to her authority as her father's attorney in fact, but simply as "Immediate Family Member." Aplt. App. at 25.

But more importantly, in the district court, Jason did not dispute THI's assertion that Mr. Douglas Spradlin, despite not signing the Admission Contract, was bound by it as a third-party beneficiary. And the district court deemed Jason's silence as a "concession of this point." *Id.* at 394 n.1. Arguments not raised in the district court "are waived for purposes of appeal." *Quigley v. Rosenthal*, 327 F.3d 1044, 1069 (10th Cir. 2003). Additionally, Jason raises the third-party-beneficiary issue only in his reply brief before this court. Generally, a party may not attempt to dispute an issue for the first time in a reply brief. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011).

Moreover, in arguing before this court that the wrongful-death beneficiaries are not bound by the Admission Contract under a third-party beneficiary theory, which we address below in Part II.B., Jason asserts that Mr. Douglas Spradlin is

indeed bound under a third-party-beneficiary theory: "The contract only was intended to benefit [Mr. Douglas Spradlin], so only he (and perhaps his estate) are bound by its terms." Aplt. Opening Br. at 34.

Accordingly, we reject Jason's arguments that the Admission Contract is not binding on Mr. Douglas Spradlin.

B. On Wrongful-Death Beneficiaries

Jason contends that "[t]he arbitration [clause] cannot be applied against the wrongful death beneficiaries" like himself who did not sign the Admission Contract. Aplt. Opening Br. at 33-34. We disagree.[2]

"Generally, third parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to . . . arbitration." *Horanburg v. Felter*, 99 P.3d 685, 689 (N.M. Ct. App. 2004) (employment discrimination case). But New Mexico's Wrongful Death Act, N.M. Stat. Ann. § 41-2-1 - § 41-2-4, "transmits to the personal representative the cause of action which the injured person would have had if death had not ensued." *Stang v. Hertz Corp.*, 463 P.2d 45, 55 (N.M. Ct. App. 1969). Thus, the wrongful-death statute confers upon the beneficiaries those rights that the decedent would have possessed had he lived. *See*

---

[2] Additionally, Jason cursorily argues that the arbitration clause cannot bind the beneficiaries because the (1) Admission Contract terminated when Mr. Douglas Spradlin died; and (2) "[t]he wrongful death beneficiaries are not parties to the agreement." Aplt. Opening Br. at 34. But he did not make these arguments below, and therefore, they are waived. *See Quigley*, 327 F.3d at 1069. Further, perfunctory arguments that fail to frame and develop an issue are insufficient to invoke appellate review. *Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994).

- 6 -

N.M. Stat. Ann. § 41-2-1 (providing a cause of action for the statutory beneficiaries insofar as the decedent, had he lived, could have "maintain[ed] an action and recover[ed] damages"); *Romero v. Byers*, 872 P.2d 840, 846 (N.M. 1994) (characterizing the wrongful death statute as a survival statute that "provides a cause of action for the benefit of the statutory beneficiaries to sue a tortfeasor for the damages . . . which the decedent himself would have been entitled to recover had death not ensued" (internal quotation marks omitted)); *Hogsett v. Hanna*, 63 P.2d 540, 543 (N.M. 1936) (stating that the wrongful-death statute, instead of "creat[ing] a new cause of action," "transmits to the designated persons a cause of action when the injured person would have had one had death not ensued").

There is a split of authority among the states regarding the binding effect of arbitration provisions on nonsignatory, wrongful-death heirs. "States that bind such plaintiffs generally view wrongful death claims as derivative of the decedent's claim, or focus on the public policy favoring arbitration agreements. States that do not bind claimants generally emphasize the independence of the wrongful death claim or the need for consent in creating binding arbitration." *Ruiz v. Podolsky*, 237 P.3d 584, 591 n.2 (Cal. 2010) (citations omitted).

We conclude that in New Mexico, a wrongful-death claim derives directly from the claim possessed by the decedent, had he or she lived. Thus, in New Mexico, as in Mississippi, Florida, Texas, and Michigan, a "wrongful-death suit is a derivative action by the beneficiaries, and those beneficiaries, therefore, stand in the position of

their decedent." *Trinity Mission of Clinton, LLC v. Barber*, 988 So. 2d 910, 919 (Miss. Ct. App. 2007); *see also Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 761-62 (Fla. 2013) ("[T]he nature of a wrongful death cause of action in Florida is derivative in the context of determining whether a decedent's estate and heirs are bound by the decedent's agreement to arbitrate. The estate and heirs stand in the shoes of the decedent for purposes of whether the defendant is liable and are bound by the decedent's actions and contracts with respect to defenses and releases."); *In re Labatt Food Serv., LP*, 279 S.W.3d 640, 646 (Tex. 2009) ("[R]egardless of the fact that [decedent's] beneficiaries are seeking compensation for their own personal loss, they still stand in [decedent's] legal shoes and are bound by his agreement."); *Ballard v. Sw. Detroit Hosp.*, 327 N.W.2d 370, 371-72 (Mich. Ct. App. 1982) ("[A]lthough the Michigan wrongful death act provides for additional damages benefitting the decedent's next of kin for loss of society and companionship, it does not create a separate cause of action independent of the underlying rights of the decedent. Rather, the cause of action is expressly made derivative of the decedent's rights."). Consequently, because Mr. Douglas Spradlin was bound by the arbitration clause as a third-party beneficiary, the non-signatory, wrongful-death beneficiaries are likewise bound.

### III.  Procedural Unconscionability

Jason argues that the arbitration clause in the Admission Contract is procedurally unconscionable because the contract is an adhesion contract. "[U]nconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party."  *Strausberg v. Laurel Healthcare Providers, LLC*, No. 33,331, __ P.3d __, 2013 WL 3226753, at \*7 (N.M. June 27, 2013) (internal quotation marks omitted).  An adhesion contract is a "standardized contract offered by a transacting party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis, without opportunity for bargaining."  *Id.* at \*8 (internal quotation marks omitted).  It "is procedurally unconscionable and unenforceable when the terms are patently unfair to the weaker party."  *Id.* (brackets and internal quotation marks omitted).  The party claiming unconscionability bears the burden to prove this affirmative contract defense. *Id.* at \*9.

In support of his argument that Melissa executed an unconscionable adhesion contract, Jason cites Melissa's affidavit statements that she has only an eleventh-grade education, she did not know what "arbitration" meant, and she "felt rushed" while signing the documents.  Aplt. Opening Br. at 29.  But these statements do not indicate (1) whether THI was in a superior bargaining position, as might occur if there were no other suitable and available nursing homes for Mr. Douglas Spradlin,

- 9 -

*see Fiser v. Dell Computer Corp.*, 188 P.3d 1215, 1221 (N.M. 2008) (noting "there was no evidence that Plaintiff could not avoid doing business under the particular terms mandated by Defendant"); or (2) whether the Admission Contract was presented to Melissa on a take-it-or-leave-it basis. And despite Melissa's limited education and her feeling rushed to sign the documents, nothing indicates that she was incapable of understanding the arbitration clause or that THI used "sharp practices or high pressure tactics" to secure her signature, *Guthmann v. LaVida Llena*, 709 P.2d 675, 679 (N.M. 1985), *overruled in part on other grounds by Cordova v. World Fin. Corp. of N.M.*, 208 P.3d 901 (N.M. 2009). Indeed, the arbitration clause was followed prominently by clear language above the signature lines indicating that she had read, understood, and consented to all the terms of the Admission Contract. Therefore, we conclude that the Admission Contract was not procedurally unconscionable.

## IV. Breach of Fiduciary Duty

Jason argues "that THI breached fiduciary duties to [Mr. Douglas Spradlin] by presenting a mandatory arbitration agreement without full disclosure and making sure Melissa understood all its terms and ramifications," and by "having [Mr. Douglas Spradlin] sign the Power of Attorney knowing that he was mentally incompetent." Aplt. Opening Br. at 31. But Jason does not identify any New Mexico case declaring that a nursing home has a fiduciary duty to a prospective patient who has not yet entered into an admission contract. Indeed, in the analogous context of applying for

- 10 -

insurance, the New Mexico Court of Appeals has expressly declined to impose such a duty prior to the formation of a contract:

> [W]e decline to acknowledge the existence of the insurer's fiduciary duty before the issuance of the policy. At the application stage, the relationship between insurer and insured is similar to that of buyer and seller, and the transaction is little more than an arms-length negotiation involving the purchase of insurance. Ordinarily, a buyer-seller relationship is not fiduciary in nature, even though the seller typically has superior bargaining power and knowledge. An essential feature and consequence of a fiduciary relationship is that the fiduciary becomes bound to act in the interests of [its] beneficiary and not itself. Obviously, this dynamic does not inhere in the ordinary buyer-seller relationship.

*Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 926 (N.M. Ct. App. 2003) (brackets, citation, and internal quotation marks omitted).

Similarly, in the context of seeking nursing-home services, the prospective patient and the nursing home are in a relationship resembling a buyer and seller, with no services forthcoming until *after* contract formation. Until that time, the prospective patient and the nursing home are engaged in no more than negotiations for services, with the patient free to walk away if he or she deems the offered services unsatisfactory.

We conclude then, that New Mexico would not recognize a fiduciary duty between a nursing home and a prospective patient during negotiations over an admission contract. Thus, Jason's breach-of-fiduciary-duty argument fails.

## V. Discovery

Jason contends that the district court should not have decided this case without providing an opportunity for discovery. We disagree.

In enacting the FAA, Congress intended that proceedings to compel arbitration be "expeditious and summary," "with only restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). To obtain discovery in opposition to a motion to compel arbitration, the arbitration opponent must at least show how discovery would "assist[ ] them in opposing the motion to compel arbitration." *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 521 (D.C. Cir. 2009).

But in the district court, Jason provided little specificity as to why discovery was necessary on the issues relevant to opposing arbitration. Indeed, he stated that if the district court was "disinclined to" rule "that the arbitration agreement is unenforceable," "it should permit discovery and conduct an evidentiary hearing." Aplt. App. at 261.

On appeal, Jason indicates that discovery was necessary "on whether [Mr. Douglas Spradlin] had mental capacity to sign the Power of Attorney." Aplt. Opening Br. at 13. As we indicated above, however, that issue is irrelevant and subject to various procedural infirmities. *See supra* Part II.A. (concluding that the power of attorney is irrelevant because Melissa signed the Admission Contract as a

family member rather than as her father's attorney in fact, that the issue was not properly raised, and that Jason conceded the issue).

Jason next claims that discovery was needed to ascertain whether the Admission Contract is procedurally unconscionable. He questions whether "Melissa felt pressured, had no reasonable alternative, or did not fully comprehend what she was signing." *Id.* at 14. The answers to those questions, however, were available to Jason through Melissa, who had already provided an affidavit to aid Jason.

Lastly, Jason asserts that discovery was needed to support his "defense that THI breached fiduciary duties owed to [Mr. Douglas Spradlin]." *Id.* We determined above that New Mexico would not recognize such a defense. Thus, discovery regarding such a defense is irrelevant.

We conclude that the district court did not abuse its discretion in rejecting Jason's request for discovery.

## CONCLUSION

The judgment of the district court is affirmed.[3]

Entered for the Court


William J. Holloway, Jr.
Circuit Judge

---

[3]    Jason argues that "[i]n determining a remand remedy, the Court is reminded that THI has not produced most of the nursing home's records for [Mr. Douglas Spradlin's] first several months of admission." Aplt. Opening Br. at 20-21. Because we affirm the district court's judgment, we do not reach Jason's remand argument.