This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**BOWERS ELECTRIC, INC.,**
**ROBERT BOWERS and**
**RHB INVESTMENTS, LLC,**

     Plaintiffs-Appellees,

v.                            **No. A-1-CA-35049**

**DAWN M. DAVIDE,**
**HOMES BY DAWN DAVIDE, INC.,**
**and LA BELLA SPA AND SALON, LLC,**

     Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nancy J. Franchini, District Judge**

Bingham, Hurst & Apodaca, P.C.
Lillian G. Apodaca
Albuquerque, NM

for Appellees

Alex Chisholm
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}   Dawn M. Davide, Homes by Dawn Davide, Inc., and La Bella Spa & Salon, LLC (collectively, Defendants), appeal from a district court order denying their motion to compel arbitration. Because the arbitration clause at issue only governs the two signatories and is limited to the subject matter of the commercial lease agreement, we conclude the district court was correct in denying Defendants' motion, and therefore affirm.

**BACKGROUND**

**A.    The Parties**

{2}   At its core, this case involves a series of failed business ventures between Dawn M. Davide (Davide) and Robert Bowers (Bowers), both individually and between each of their two respective businesses. Davide is a resident of Bernalillo County, New Mexico. She is the sole shareholder of Homes by Dawn Davide, Inc., a New Mexico corporation and the managing member of La Bella Spa & Salon, LLC, (the Spa), a New Mexico limited liability company. Bowers is also a resident of Bernalillo County. He is the president of Bowers Electric, Inc., a licensed New Mexico contractor and New Mexico corporation, and identifies as the owner of RHB Investments, LLC, a New Mexico limited liability company.

**B.    The Agreements**

{3}     In March 2013 Homes by Dawn Davide, Inc. and RHB Investments, LLC entered into a commercial lease agreement for 4,900 square feet of space located in the Spa (the wine shop lease). Davide and Bowers served as signatories on the lease. The intended purpose of this lease was essentially for RHB Investments, LLC to operate a wine shop (selling wine by the bottle and glass, and wine accessories). This wine shop lease contained an arbitration clause, stating that "any dispute between the lessor and the lessee that cannot be settled by the parties shall be submitted to arbitration for resolution according to the rules of the American Arbitration Association."

{4}     Besides the wine shop lease, it appears from the record that there could possibly be four other alleged agreements to exist between the parties. The other alleged agreements include:

1.      An undated commercial lease agreement for rental space between Homes by Dawn Davide, Inc. and RHB Investments, LLC for 900 square feet of space near or in the Spa. The space was previously occupied by Homes by Dawn Davide, Inc. The intended purpose of the lease was for RHB Investments, LLC to run a retail shop selling wine and wine-related products and also participate in the Spa's sponsored events. There is nothing in the record to show this lease was ever signed by either party.

2.      A personal loan from Bowers to Davide for $60,000. There is no documentary evidence showing the existence of this loan in the record. In his unattested affidavit, Bowers lists the loan and loan amount. In her affidavit, Davide recognized a $58,000 loan, partial repayment and resolution of the balance.

3

3. An electrical construction subcontract between Homes by Dawn Davide, Inc. and Bowers Electric, Inc. totaling $43,784.35 for electrical improvements to the Spa. There is no documentary evidence showing the existence of this contract in the record. Instead, there is a claim of lien for the amount of the contract which was filed in Bernalillo County.

4. An oral agreement between Plaintiffs and Davide for flooring materials and storage space totaling $15,996.89. There is no documentary evidence showing the existence of this contract in the record.

## C.     Procedural History

{5}     On February 6, 2015, Plaintiffs filed their first amended complaint, which alleges the following six claims:

1. Bowers Electric, Inc. against all Defendants for breach of contract for labor and materials provided for alterations to Defendants' property in the amount of $43,764.78;

2. Bowers Electric, Inc. against all Defendants under the theory of quantum meruit for labor and materials to Defendants for improvements of real property in the amount of $43,764.78;

3. Bowers Electric, Inc. against Davide and Homes by Dawn Davide, Inc. for foreclosure on claim of lien in the amount of $43,764.78;

4. Bowers against Davide for breach of promissory note in the amount of $21,000;

5. Plaintiffs against Davide and Homes by Dawn Davide, Inc. for breach of contract for flooring materials and storage rental in the amount of $15,996.89;

4

6. Bowers Electric, Inc. against all Defendants under the theory of in quantum meruit for the flooring materials in the amount of $8,196.89;

{6} On May 26, 2015, Defendants filed a motion to compel arbitration and asked the district court to order the parties to arbitrate all of the claims brought in Plaintiffs' amended complaint, pursuant to the wine shop lease. In their motion, Defendants argued that all of Plaintiffs' claims arose out of this commercial lease and were therefore all subject to arbitration. They encouraged the district court to order the entire matter to arbitration for purposes of judicial economy.

{7} The district court held a hearing on Defendants' motion on August 20, 2015. Defendants regularly referred to the wine shop lease as the "seminal document" and argued that all of Plaintiffs' claims flowed from it. In turn, Plaintiffs argued that the wine shop agreement had nothing to do with their claims involving the electrical subcontract, the promissory note, or the flooring material and storage agreements.

{8} The district court rejected Defendants' position and found that according to the complaint, many separate agreements were at issue, "regardless of whether they came after the quote 'seminal lease[,]' " thereby denying their motion to compel arbitration. The district court left the door open for Defendants to re-file their motion if they eventually had more facts to support their motion. Defendants appealed the district court's order.

**D.       Summary of Parties' Arguments**

**{9}**       On appeal, Defendants contend that the arbitration clause in the wine shop lease between Homes by Dawn Davide, Inc. and RHB Investments, LLC, is inclusive of any dispute between all parties and is not limited to the subject matter of the lease agreement. Because the arbitration clause in this lease included the language that "any dispute" between the parties would be submitted to arbitration, Defendants maintain that this applies to all of the six claims Plaintiffs brought in their complaint. In response, Plaintiffs directed this Court to the multiple alleged agreements that existed between various separate parties concerning a promissory note, flooring material and storage rental agreement, and an electrical contract to make improvements to the facilities at the Spa. They argue that Defendants cannot use an arbitration provision from one lease agreement, the wine shop lease, as a means to force different and distinct parties to arbitrate issues specifically not included in the wine shop lease agreement.

**DISCUSSION**

**A.       Standard of Review**

**{10}**       Whether the arbitration clause in the wine shop agreement was meant to extend to any and all subsequent agreements between the principles and their businesses—is a pure question of law. "We apply a de novo standard of review to a district court's

6

denial of a motion to compel arbitration." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. When the resolution of an arbitration issue involved the interpretation of documentary evidence, we need not defer to the trial court because we are in as good a position to interpret the contract. *See California Cas. Ins. Co. v. Garcia-Price*, 2003-NMCA-044, ¶ 6, 133 N.M. 439, 63 P.3d 1159.

**B.      Arbitration and General  Contract Law Principles**

{11}      Arbitration is a form of dispute resolution that is highly favored in New Mexico because it "promotes both judicial efficiency and conservation of resources by all parties." *Santa Fe Technologies, Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 51, 131 N.M. 772, 42 P.3d 1221. Our Supreme Court has held that "arbitration agreements are contracts enforceable by the rules of contract law." *Horne v. Los Alamos Nat'l. Sec., L.L.C.*, 2013-NMSC-004, ¶ 16, 296 P.3d 478.  As such, this Court applies the principles of contract law to the interpretation of an arbitration agreement. *See L.D. Miller Constr., Inc. v. Kirschenbaum*, 2017-NMCA-030, ¶ 18, 392 P.3d 194. As a general matter, "[w]e view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688 (internal quotation marks and citation omitted). "The purpose, meaning, and intent of the parties to a contract is to be deduced from the language employed by them; and

7

where such language is not ambiguous, it is conclusive." *Id.* (alteration, internal quotation marks, and citation omitted). Therefore, "we consider arbitration agreements as a whole to determine how they should be interpreted." *Medina v. Holguin*, 2008-NMCA-161, ¶ 8, 145 N.M. 303, 197 P.3d 1085 (alterations, internal quotation marks, and citation omitted).

{12}     In interpreting any contract, our Court "effectuate[s] the intent of the parties by adopting a reasonable construction of the usual and customary meaning of the contract language." *Smith & Marrs, Inc. v. Osborn*, 2008-NMCA-043, ¶ 10, 143 N.M. 684, 180 P.3d 1183 (internal quotation marks and citation omitted). "[A]bsent any ambiguity, the [district] court may not alter or fabricate a new agreement for the parties." *CC Hous. Corp. v. Ryder Truck Rental, Inc.*, 1987-NMSC-117, ¶ 6, 106 N.M. 577, 746 P.2d 1109.

{13}     When an arbitration clause is at issue, this Court's "inquiry is whether the parties have agreed to arbitrate the matter under dispute." *Santa Fe Technologies, Inc.*, 2002-NMCA-030, ¶ 52. "When a reasonable relationship between the subject matter of the dispute and the underlying agreement exists, the dispute is within the arbitration provision and should be arbitrated." *Id.*

## C.      Interpretation of the Arbitration Clause

{14}      The issue in this appeal is whether a single commercial lease agreement between two legal entities containing an arbitration clause can be applied to subsequent separate business transactions, thereby requiring separate and different legal entities and individuals to arbitrate all claims.

{15}      Applying the principles of contract law and the plain meaning of the contract language to the wine shop lease, we conclude that the agreement is unambiguous as a matter of law. The agreement itself only concerned leasing 4900 square feet of space for the intended purpose to develop a wine shop at the Spa location. The arbitration clause explicitly states that it is applicable to "any dispute *between the lessor and the lessee*," or Homes by Dawn Davide, Inc. and RHB Investments, LLC. (Emphasis added.) There is nothing in the lease that is evidence to support an agreement between the parties agreeing that the arbitration clause was binding on any future or subsequent business transactions involving Davide or Bowers individually, or their separately controlled and managed entities.

{16}      We conclude that the arbitration clause is not applicable to Bowers, individually; Bowers Electric, Inc.; Davide, individually; or the Spa. *See Horanburg v. Felter*, 2004-NMCA-121, ¶ 16, 136 N.M. 435, 99 P.3d 685 ("Generally, third

parties who are not signatories to an arbitration agreement are not bound by the agreement and are not subject to, and cannot compel, arbitration.").

{17}    Defendants relying on *Santa Fe Technologies, Inc.* also argue that: (1) because Plaintiffs' amended complaint raised claims that occurred after the signing of the wine shop agreement, they were therefore ancillary to the wine shop agreement; and (2) Plaintiffs' claims were actually preemptive counterclaims to an alleged claim for breach of contract by Davide. Defendants further argue that *Santa Fe Technologies, Inc.*'s "unlimited" language supports their arguments that subsequent agreements between the related individuals and entities should be subject to the wine shop lease arbitration clause. 2004-NMCA-030, ¶ 57. These arguments are unpersuasive.

{18}    In *Santa Fe Technologies, Inc.*, this Court emphasized that the subject agreement did not state in an "unlimited manner" that any disputes that may arise between the parties in the future shall be subject to arbitration. *Id.* Rather, the subject agreement included the language "[i]n the event of any breach, default, dispute, controversy, or claim *arising out of or relating to* this [a]greement." *Id.* ¶ 53 (emphasis added). Defendant equates the language in the *Santa Fe Technologies, Inc.* agreement with the language here—"any dispute between the lessor and the lessee that cannot be settled by the parties." By equating the language in the two agreements, Defendant is asking us to treat all the parties in the various agreements as one and the

same. We decline to apply such an exceptionally broad interpretation of the wine shop lease arbitration clause. As a general rule, arbitration agreements "are drafted with broad strokes and, as a result, require broad interpretation[;]" however, there still has to be a reasonable relationship between the subject matter of the four alleged agreements and the wine shop agreement. *Id.* ¶¶ 52, 55. As the record stands now, we see no such relationship.

{19} This Court has specifically stated that we "will not rewrite a contract for the parties." *Id.* ¶ 52. It is our duty to rely on "[t]he terms of the agreement [to] define the scope of the jurisdiction, conditions, limitations and restrictions on the matters to be arbitrated." *Id.* (internal quotation marks and citation omitted).

**CONCLUSION**

{20} Accordingly, for the reasons stated in this opinion, we affirm.

{21} **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**STEPHEN G. FRENCH, Judge**

_____
**EMIL J. KIEHNE, Judge**

11